

SO ORDERED,

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: February 4, 2021**

**The Order of the Court is set forth below. The docket reflects the date entered.**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

| | |
|---|---|
| **HERITAGE REAL ESTATE INVESTMENT, INC.,** | **CASE NO. 14-03603-NPO** |
| **DEBTOR.** | **CHAPTER 7** |
| **HERITAGE REAL ESTATE INVESTMENT, INC. AND J. STEPHEN SMITH, CHAPTER 7 TRUSTEE** | **PLAINTIFFS** |
| **VS.** | **ADV. PROC. 20-00034-NPO** |
| **BISHOP LUKE EDWARDS** | **DEFENDANT** |

**IN RE:**

| | |
|---|---|
| **ALABAMA-MISSISSIPPI FARM INC.,** | **CASE NO. 16-01156-NPO** |
| **DEBTOR.** | **CHAPTER 7** |
| **ALABAMA-MISSISSIPPI FARM, INC. AND J. STEPHEN SMITH, CHAPTER 7 TRUSTEE** | **PLAINTIFFS** |
| **VS.** | **ADV. PROC. 20-00035-NPO** |
| **BISHOP LUKE EDWARDS** | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER: (1) CONSOLIDATING
HEARING; (2) GRANTING MOTION FOR DEFAULT JUDGMENT;
(3) ISSUING PERMANENT INJUNCTION; AND (4) AWARDING DAMAGES**

This matter came before the Court for hearing on January 6, 2021 (the "Hearing") on the

Motion for Default Judgment (the "Motion for Default") (Adv. Dkt. 17)[1] filed by J. Stephen Smith,

chapter 7 trustee (the "Trustee"), in the Adversary Proceedings.  At the Hearing, Jim F. Spencer,

Jr. ("Spencer") represented the Trustee; neither Bishop Luke Edwards ("Bishop Edwards") nor

anyone acting on his behalf appeared at the Hearing.  In support of the Motion for Default, the

Trustee introduced seven (7) exhibits[2] and his own testimony into evidence at the Hearing.  The

Court granted the Motion for Default from the bench.  This Opinion memorializes and supplements

the Court's bench ruling.

**Jurisdiction**

This Court has jurisdiction over the parties to and the subject matter of this proceeding

pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A)

---

[1] Adversary proceeding number 20-00034-NPO (the "Heritage Adversary") is related to the Heritage Real Estate Investment, Inc. ("Heritage") (No. 14-03603-NPO) bankruptcy case (the "Heritage Bankruptcy Case"), and adversary proceeding number 20-00035-NPO (the "AL-MS Farm Adversary") (together with the Heritage Adversary, the "Adversary Proceedings") is related to the Alabama-Mississippi Farm, Inc. ("AL-MS Farm") (No. 16-01156-NPO) bankruptcy case (the "AL-MS Farm Bankruptcy Case") (together with the Heritage Bankruptcy Case, the "Bankruptcy Cases").  The dockets of the Adversary Proceedings are identical, and the Court consolidated the matters set for the Hearing.  The two Adversary Proceedings are discussed as one proceeding for brevity, and citations to the docket entries are "(Adv. Dkt. ___)", although they refer to the docket entries in both the AL-MS Farm Adversary and the Heritage Adversary. Citations to docket entries in the AL-MS Farm Bankruptcy Case are "(AL-MS Farm Dkt. ___)"; citations to the docket in the Heritage Bankruptcy Case are "(Heritage Dkt. ___)"; citations to docket entries in other related adversary proceedings are "(Adv. No. ___ Dkt. ___)"; and citations to docket entries in related civil actions in other jurisdictions are "(Civ. No. ____ Dkt. ___)".

[2] Citations to the Trustee's seven (7) exhibits are "(Tr. Ex. ___)".

and (O).  Notice of the Hearing was proper under the circumstances.[3]

<b>Facts</b>[4]

In the Order Consolidating Hearing and Granting Preliminary Injunction (the "Preliminary Injunction") (Adv. Dkt. 15) the Court made extensive findings of fact detailing the nearly seven (7)-year history of the Bankruptcy Cases.  The Court includes these facts in this Opinion to provide a complete record.

By way of background,[5] Heritage and AL-MS Farm are two (2) of six (6) related entities that operate under the organizational umbrella of the Christ Temple Apostolic Church (the "Church").  (Heritage Dkt. 75).  The other related entities are Reach, Inc. ("Reach"), Apostolic Association Assemblies, Inc., Dynasty Group, Inc. ("Dynasty"), and Apostolic Advancement Association ("AAA").  (Heritage Dkt. 75).  Bishop Edwards, a Pentecostal minister, established the Church in Michigan in 1961 and has remained associated with the Church and its related entities.  (Heritage Dkt. 75).  Heritage, AL-MS Farm, and the other Church-related entities are separate and distinct corporate entities.  (Heritage Dkt. 75 at 3).  The Heritage Bankruptcy Case and the AL-MS Farm Bankruptcy Case, both of which are active and pending in this Court, have complicated and litigious histories.

---

[3] The Bankruptcy Noticing Center sent notice of the Hearing to Bishop Edwards on November 26, 2020 by U.S. mail at the two (2) addresses of record.  *See Greyhound Lines Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730 (5th Cir. 1995) (holding that a document duly served by mail creates a rebuttable presumption that it reached its destination in the usual time and actually was received by the person to whom the mail was addressed).

[4] Pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court.

[5] The Court recognizes that this Opinion is lengthy, but a comprehensive history of the Bankruptcy Cases and related litigation is necessary to understand the decision reached in the Adversary Proceedings.

A.       **Heritage Bankruptcy Case & Related Litigation**

Heritage was established as a for-profit corporation in Mississippi in 1989 and has served as a holding company for multiple businesses, including motels, a shopping center, and convenience stores.  (Heritage Dkt. 75 at 3-4).  Heritage filed a petition for relief under chapter 11 of the U.S. Bankruptcy Code (Heritage Dkt. 1) in this Court on November 6, 2014.  The Heritage Bankruptcy Case is the fourth bankruptcy filing by Heritage in the past decade and the third bankruptcy filing by Heritage in the past two years.  (Heritage Dkt. 75).  The date of the commencement and disposition of each of Heritage's past chapter 11 bankruptcy cases is listed below:

(1)       Case No. 03-53351-ERG (Bankr. S.D. Miss. July 8, 2003), dismissed on December 16, 2003;

(2)       Case No. 13-70116-BGC11 (Bankr. N.D. Ala, Jan. 8, 2013), dismissed on October 23, 2013; and

(3)       Case No. 14-70349-BGC11 (Bankr. N.D. Ala. Mar. 2, 2014), dismissed on May 7, 2014.

(Heritage Dkt. 75 at 3).

After concluding that Heritage did not have current business operations other than the collection of accounts receivable, the Court converted the Heritage Bankruptcy Case to chapter 7 pursuant to 11 U.S.C. § 1112(b).  (Heritage Dkt. 75).  Thereafter, the Trustee was appointed to administer the Heritage Bankruptcy Case.  (Heritage Dkt. 82).  A chapter 7 trustee's duties are set forth in 11 U.S.C. § 704 and include collecting and liquidating assets of the bankruptcy estate.  To that end, the Trustee has filed during the course of the Heritage Bankruptcy Case, three adversary proceedings in this Court and three actions in Alabama and Mississippi state courts to recover personal and real property of the Heritage bankruptcy estate.  Three of these lawsuits were filed against Church-related entities.  A summary of the litigation follows below.

1.      ***Smith v. Dynasty Group, Inc.*, No. 16-00040-NPO (Bankr. S.D. Miss. Oct. 17, 2017) (Dkt. 42)**

On June 29, 2016, the Trustee filed an adversary proceeding against Dynasty to set aside Dynasty's post-petition recording of a quitclaim deed purportedly from Heritage to Dynasty conveying certain real property in Kemper County, Mississippi (the "Kemper County Property"). (Adv. No. 16-00040-NPO Dkt. 42 at 5).   After a trial on the merits, the Court held in the Memorandum Opinion on Complaint to Set Aside Conveyance §§ 544, 549 and 362, for Damages for Violation of Automatic Stay and to Cancel Conveyance as Cloud on Title that the quitclaim deed to the Kemper County Property was facially invalid and void as a matter of law.  (Adv. No. 16-00040-NPO Dkt. 42 at 5).  The Court further held that even if the quitclaim deed to the Kemper County Property was valid, the Trustee could avoid it under 11 U.S.C. § 544(a)(3).  (Adv. No. 16-00040-NPO Dkt. 42 at 5).  Dynasty filed a Notice of Appeal (Adv. No. 16-00040-NPO Dkt. 48) to the United States District Court for the Southern District of Mississippi (the "Mississippi District Court").  The Mississippi District Court issued a written opinion affirming the decision of this Court.  (Civ. No. 3:17-cv-00883-LG-LRA Dkt. 16).  Dynasty then filed a Notice of Appeal (Civ. No. 3-17-cv-00883-LG-LRA Dkt. 46) to the Fifth Circuit Court of Appeals (the "Fifth Circuit"). The Fifth Circuit affirmed the decision of this Court in favor of the Trustee.  S*ee Smith v. Dynasty Grp., Inc. (In re Heritage Real Est. Inv., Inc.)*, 783 F. App'x 403 (5th Cir. 2019).

2.      ***Smith v. Johnson, King*, *Harrison, Apostolic Association Assemblies, Inc., Greater Christ Temple Church,* No. 16-00035-NPO (Bankr. S.D. Miss. Sept. 13, 2018) (Dkt. 125)**

On June 15, 2016, the Trustee filed an adversary proceeding against Bruce Johnson ("Johnson"), Michael L. King ("King"), William Harrison ("Harrison") (collectively, the "Harrison Parties"), the Church, and AAA asking the Court for a declaratory judgment as to the ownership of real property in Greene County, Alabama (the "Greene County Property") and a

check in the amount of $96,750.00 tendered to Ira Drayton Pruitt ("Pruitt") as counsel for the Harrison Parties to redeem the Greene County Property from a sheriff's sale (the "Greene Adversary").  (Adv. No. 16-00035-NPO Dkt. 125).  Without the Trustee's knowledge or the Court's approval, Heritage purportedly executed a quitclaim deed transferring its interest in the Greene County Property to the Church.  The Court entered default judgments against AAA and the Church (Heritage Dkt. 73) and against Johnson and King (Heritage Dkt. 74).  The Trustee and Harrison, the only named defendant to file an answer, reached a settlement, and the Court entered the Order Granting Joint Motion to Approve Compromise and Settlement Pursuant to Rule 9019 (Adv. No. 16-00035-NPO Dkt. 125) finding that the proposed settlement was "'fair and equitable' when considering the likely rewards, costs, and risks of litigation." (Adv. No. 16-00035-NPO Dkt. 125 at 14).

AAA and the Church filed a Notice of Appeal (Adv. No. 16-00035-NPO Dkt. 129) to the Mississippi District Court on September 28, 2018 appealing the default judgments, the settlement order, and the final judgment.  The Mississippi District Court affirmed in part, reversed in part, and remanded in part.  Although the District Court remanded the matter to this Court for further proceedings, it ordered the parties first to hold a settlement conference with United States Magistrate Judge F. Keith Ball to explore possible settlement options.  (Civ. No. 3:18-CV-00675-DPJ-FKB Dkt. 15).  On October 23, 2020, the settlement conference produced an agreement on the same terms the Court previously had approved.  (Preliminary Inj. Hr'g at 1:59:35-2:00:05 (Oct.

27, 2020)).[6] The Mississippi District Court entered an order dismissing the pending appeal with prejudice. (Civ. No. 3:18-CV-00675-DPJ-FKB Dkt. 17).

On November 12, 2020, the Trustee, the Harrison Parties, AAA, and the Church filed the Joint Motion to Approve Compromise and Settlement Pursuant to Rule 9019 (the "Joint Settlement Motion") (Heritage Dkt. 521). The Notice of Joint Motion to Approve Compromise and Settlement Pursuant to Rule 9019 (Heritage Dkt. 522) provided that "a written objection or other responsive pleading may be filed with the [Court and] . . . [i]f no objections are timely filed, the Trustee will present this matter to the Court for entry of an Order, *EX PARTE*." (Heritage Dkt. 522). No objections to the Join Settlement Motion were filed, and the Court entered the Order Approving Joint Motion to Approve Compromise and Settlement Pursuant to Rule 9019 (Dkt. # 521) (the "Order Approving Greene Settlement") (Heritage Dkt. 547) approving the Joint Settlement Motion and authorizing the Trustee to execute a quitclaim deed on the Greene County Property in favor of the Harrison Parties. The Order Approving Greene Settlement also reduced the Harrison Parties' claims by $96,750.00. (Heritage Dkt. 547).

**3.**     *Smith v. Dynasty Group, Inc.*, **No. CV-14-9000949 (Ala. Cir. Ct. Mar. 25, 2019)**

The Trustee prosecuted a complaint in the Circuit Court of Sumter County, Alabama (the "Sumter County Court") to recover real property fraudulently conveyed by fourteen (14) quitclaim deeds from Heritage to Dynasty. (Heritage Dkt. 268, 490, 493). The Sumter County Court entered a final judgment on the jury verdict in favor of the Trustee finding that the fourteen (14) quitclaim

---

[6]     The Court held a hearing on October 27, 2020 (the "Preliminary Injunction Hearing") on the request for a preliminary injunction contained in the Trustee's Complaint for (I) Preliminary and Permanent Injunction and (II) for Contempt Sanctions Against Bishop Luke Edwards for Violating the Automatic Stay and (III) for Other Relief (the "Complaint") (Adv. Dkt. 1) filed in the Adversary Proceedings. The Preliminary Injunction Hearing was not transcribed. Citations to the timestamp of the audio recording are "(Preliminary Inj. Hr'g at 00:00:00-00:00:00 (Oct. 27, 2020))".

deeds were fraudulent conveyances and revesting the property in the Heritage bankruptcy estate (the "Alabama Final Judgment"). (Heritage Dkt. 268, 490, 493). Dynasty appealed the Alabama Final Judgment, and the Alabama Supreme Court affirmed the decision of the Sumter County Court. (Heritage Dkt. 493-1).

**4.** ***Smith v. Apostolic Association Assemblies, Inc.*, No. 16-CV-035(W) (Miss. Cir. Ct. 2016)**

The Trustee filed a complaint in the Circuit Court of Lauderdale County, Mississippi (the "Lauderdale County Court") against AAA to recover the balance due on a promissory note. (Adv. Dkt. 1 at 4). The Trustee filed a motion for summary judgment, which is currently pending, before the Lauderdale County Court. (Adv. Dkt. 1 at 4). The current public health crisis[7] caused the Lauderdale County Court to cancel the original hearing and no new hearing date has been set. (Preliminary Inj. Hr'g at 2:05:00-2:05:36 (Oct. 27, 2020)).

**5.** ***Smith, et al. v. Brewer*, No. CV-14-900026 (Ala. Cir. Ct. 2014)**

The Trustee was substituted for Heritage and AL-MS Farm as the plaintiff in a legal malpractice lawsuit filed pre-petition by Heritage, AL-MS Farm, Bishop Edwards, and AAA against William C. Brewer, III ("Brewer") in the Sumter County Court. (Heritage Dkt. 488; AL-MS Farm Dkt. 377). The Trustee alleged that Brewer breached the duty of care in allowing a default judgment in the amount of $6,599,648.00 (the "Alabama Default Judgment") to be entered in favor of the Harrison Parties and failing to file a timely appeal. (Heritage Dkt. 488 at 5; AL-MS Farm Dkt. 377 at 5); s*ee Edwards v. Johnson*, 143 So. 3d 691 (Ala. 2013). The Trustee later

---

[7] *See How COVID-19 Spreads*, Centers for Disease Control & Prevention (Feb. 4, 2021), https://www.cdc.gov/coronavirus/2019-ncov/transmission/index.html.

reached a settlement with Brewer that the Court approved.  (Heritage Dkt. 488; AL-MS Farm Dkt. 377).

> **6.**    ***Smith v. Citizens Trust Bank (In re Heritage Real Estate Investment, Inc.)***, **No. 19-00021-NPO, 2019 WL 5061160 (Bankr. S.D. Miss. Aug. 21, 2019)**

On May 10, 2019, the Trustee filed an adversary proceeding against Citizens Trust Bank ("Citizens") for its wrongful refusal to pay an official bank check in the amount of  $96,750.00 awarded to the Trustee as part of the settlement reached between the Trustee and the Harrison Parties in *Smith v. Johnson*.  (Adv. No. 16-00035-NPO Dkt. 124).  Citizens and the Trustee entered into a settlement agreement where Citizens agreed to pay the Trustee $96,750.00.  (Adv. No. 19-00021-NPO Dkt. 29 at 2).

**B.    AL-MS Farm Bankruptcy Case & Related Litigation**

On March 31, 2016, AL-MS Farm also filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  (AL-MS Farm Dkt. 1).  Months later, the Court converted the AL-MS Farm Bankruptcy Case to chapter 7 (AL-MS Farm Dkt. 57), and the Trustee was appointed to administer AL-MS Farm's bankruptcy estate.  The Trustee is thus the chapter 7 trustee in both the Heritage Bankruptcy Case and the AL-MS Farm Bankruptcy Case.  In the AL-MS Farm Bankruptcy Case, the Trustee has incurred fees and expenses defending the sale of certain real property against the untimely claim and objections, appeals, and a lawsuit filed by Reach, another Church-related entity.

> **1.    Newton County Property**

AL-MS Farm's only scheduled asset in the AL-MS Farm Bankruptcy Case is certain real property located in Newton County, Mississippi (the "Newton County Property") with a stated

value of $101,260.00.[8]  (AL-MS Farm Dkt. 21).  On January 25, 2017, the Trustee filed the Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (AL-MS Farm Dkt. 105) asking the Court to allow him to sell the Newton County Property at auction.  No Church-related entity filed a timely written objection. After a hearing, the Court, on March 16, 2017, entered an order approving the sale of the Newton County Property free and clear of liens (the "Newton Sale Order") (AL-MS Farm Dkt. 119).  The sale of the Newton County Property was scheduled for May 19, 2017.  (AL-MS Farm Dkt. 154).

      **2.**     **Reach**

On May 11, 2017 after the bar date, Reach filed a proof of claim in the AL-MS Farm Bankruptcy Case asserting a claim of $2,356,000.00 and a lien of $1 million on the Newton County Property (the "Reach POC").  (AL-MS Farm Cl. 3-1).  The claim purportedly was based on a loan agreement which was filed in the land records on May 3, 2017.  The Trustee filed an objection to the Reach POC, which he later amended, alleging that Reach violated the stay under 11 U.S.C. § 362 by recording the loan agreement and that Reach did so to place a cloud on the title to the Newton County Property and disrupt the auction.  (AL-MS Farm Dkt. 127, 136).  Then, at 5:03 pm on the day before the auction of the Newton County Property, Reach filed the Reach, Inc.'s Objection to Auction of Real Property (the "Objection to Newton Sale") (AL-MS Farm Dkt. 130) alleging that the AL-MS Farm bankruptcy estate did not have proper title to the Newton County Property because the title listed the owner as "Alabama-Mississippi Farm" and not "Alabama-Mississippi Farm, Inc."  (AL-MS Farm Dkt. 130).  On May 19, 2017, the Trustee sold the Newton County Property for $660,000.00, plus a ten percent (10%) purchaser's premium of $66,000.00 for a total purchase price of $726,000.00.  (AL-MS Farm Dkt. 154).   The Trustee filed a motion

---

[8] The Statement of Financial Affairs also indicated a legal malpractice claim against Brewer, which the Trustee settled.  (AL-MS Farm Dkt. 22 at 2, 377).

to confirm the sale, and the Court entered the Order Approving Motion for Confirmation of Sale and Approval to Pay Auctioneer's Fees and Expenses (the "Confirmation of Newton Sale Order") (AL-MS Farm Dkt. 154; Tr. Ex. 16). On July 5, 2017, the Court disallowed the Reach POC. (AL-MS Farm Dkt. 158). Later, after a hearing, the Court issued an order striking the Objection to Newton Sale as untimely. (AL-MS Farm Dkt. 176).

### a. *Reach, Inc. v. Alabama-Mississippi Farm, Inc.*, No. 3:17-cv-00564-HSO-JCG (S.D. Miss. Dec. 21, 2017)

On July 13, 2017, Reach filed a Notice of Appeal (AL-MS Farm Dkt. 162) of the Confirmation of Newton Sale Order to the Mississippi District Court. (AL-MS Farm Dkt. 162). The Trustee asserted that the appeal was untimely and the Mississippi District Court, therefore, lacked jurisdiction. The Mississippi District Court agreed and dismissed the appeal. (Civ. No. 3:17-cv-00564-HSO-JCG Dkt. 7).

### b. *Reach, Inc. v. Smith*, No. 17-00038-NPO (Bankr. S.D. Miss. May 14, 2018) (Dkt. 23)

Reach next filed an adversary proceeding against the Trustee seeking the same relief it sought in its late-filed Objection to Newton Sale—to enjoin the sale of the Newton County Property until the validity of AL-MS Farm's title to the Newton County Property and Reach's interest in the Newton County Property could be determined. (Adv. No. 17-00038-NPO Dkt. 1). The Court held a trial on February 9, 2018 and dismissed the adversary proceeding with prejudice. (Adv. No. 17-00038-NPO Dkt. 23). The Court held that Reach "may not receive another opportunity to argue the merits of its case simply because it failed to file a responsive pleading" in a timely manner. (Adv. No. 17-00038-NPO Dkt. 23). Reach appealed the dismissal to the Mississippi District Court, which dismissed the appeal as moot. On further appeal by Reach, the

decision of this Court was affirmed by the Fifth Circuit.  *See Reach, Inc. v. Smith (In re Alabama-Mississippi Farm, Inc.)*, 791 F. App'x 466 (5th Cir. 2019).

### C.      Proofs of Claim Dispute in the Bankruptcy Cases

The Harrison Parties are the only pre-petition creditors in the AL-MS Farm Bankruptcy Case[9] (Adv. Dkt. 1 at 6) and the largest, but not the only pre-petition creditor in the Heritage Bankruptcy Case.[10] (Adv. Dkt. 1 at 6).  The Harrison Parties filed multiple proof of claims (the "Disputed POCs") (Heritage Cl. 11-1; Heritage Cl. 13-1; AL-MS Farm Cl. 2-1) in the Bankruptcy Cases all based on the Alabama Default Judgment.  The Trustee filed objections to the Disputed POCs in the Bankruptcy Cases.  (Heritage Dkt. 308, 309; AL-MS Farm Dkt. 192).

The Court consolidated the matters regarding the Disputed POCs in the Bankruptcy Cases and held an evidentiary hearing.  On March 29, 2018, the Court issued the Order Dismissing Order to Show Cause; Sustaining Trustee's Objection to Proof of Claim No. 11 Filed by Bruce L. Johnson; Sustaining Trustee's Objection to Proof of Claim No. 13 Filed by William Harrison on Behalf of Johnson, et al; and Sustaining Trustee's Objection to Proof of Claim No. 2 Filed on Behalf of William Harrison, Bruce Johnson and Michael L. King (the "Claim Order") (Heritage Dkt. 342; AL-MS Farm Dkt. 239).   In the Claim Order, the Court found that: (1) the Harrison Parties held a general unsecured claim in the amount of $8,047,163.52 in the Heritage Bankruptcy Case; (2) the Harrison Parties held a general unsecured claim in the amount of $10,069,800.11 in

---

[9] The Court notes that the United States Trustee filed a proof of claim in the amount of $325.00 (AL-MS Farm Cl. 1-1), the Mississippi Department of Revenue filed a proof of claim in the amount of $919.76 (AL-MS Farm Cl. 4-1), and the Trustee testified at the Preliminary Injunction Hearing to post-petition fees owed by the AL-MS Farm bankruptcy estate.  These post-petition and pre-petition claims are not of consequence for purposes of this analysis.

[10] The Trustee testified at the Preliminary Injunction Hearing to the accumulation of post-petition fees owed by the Heritage bankruptcy estate in addition to the claims already asserted in the Heritage Bankruptcy Case.

the AL-MS Farm Bankruptcy Case; (3) any disbursement must be made to the Harrison Parties in equal share of one-third (1/3) of the total disbursement; and (4) any disbursement of funds from the AL-MS Farm Bankruptcy Case or the Heritage Bankruptcy Case to the Harrison Parties must be applied to the balance of the Alabama Default Judgment to prevent any duplication of recovery on behalf of the Harrison Parties in both the AL-MS Farm Bankruptcy Case and the Heritage Bankruptcy Case. (Heritage Dkt. 342 at 22; AL-MS Farm Dkt. 239 at 22). The Claim Order is a final, nonappealable order.[11]

**D.      Proposed RICO Complaint**

Several years after the Trustee had taken control of the bankruptcy estates of Heritage and AL-MS Farm, alleged representatives of Heritage and AL-MS Farm (the "Debtors") filed in the Bankruptcy Cases the Motion to Compel Trustee's Abandonment of Property of the Estate (Litigation Claims) (the "Motion to Compel") (Adv. Dkt 1-4; Heritage Dkt. 413; AL-MS Farm Dkt. 336) asking the Court to compel the Trustee to abandon claims held by Heritage and AL-MS Farm against the Harrison Parties for alleged violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, both federal and state. (Adv. Dkt. 1-4; Heritage Dkt. 413 at 3; AL-MS Farm Dkt. 336). Attached to the Motion to Compel was the proposed Complaint (the "Proposed RICO Complaint") (Adv. Dkt. 1-4 at 8-40) prepared by Robert E. Hauberg, Jr., an attorney with Baker, Donelson, Bearman, Caldwell & Berkowitz, PC in Mississippi, and Paul A. Robinson, Jr. ("Robinson"), a sole practitioner in Tennessee. The Trustee already had informed

_____

[11] The Harrison Parties filed the Complaint for Declaratory Judgment, to Determine Extent, Validity and Priority of Liens and for Other Relief (Adv. No. 20-00029-NPO Dkt. 1) asking the Court to issue a declaratory judgment holding that the recording of the Alabama Default Judgment created a "constructive trust" that was "superior to the liens, claims and encumbrances of Heritage and the Trustee." The Court issued an opinion dismissing the complaint with prejudice on grounds of res judicata. (Adv. No. 20-00029-NPO Dkt. 18). The Harrison Parties filed a Notice of Appeal (Adv. No. 20-00029-NPO Dkt. 20) to the Mississippi District Court on November 3, 2020. (Civ. No. 3:20-cv-00708-HTW-LGI). The appeal remains pending.

counsel for the Debtors that the "Bankruptcy Court has recognized the Alabama Supreme Court's decision upholding the [Alabama Default] judgment" and that the Proposed RICO Complaint appeared to be a collateral attack of the Alabama Default Judgment.  (Adv. Dkt. 1-4; Heritage Dkt. 413-5; AL-MS Farm Dkt. 336-5).  The Court entered the Agreed Order Granting Withdrawal of Motion to Compel Trustee's Abandonment of Property of Estate (Litigation Claims) (Heritage Dkt. 417; AL-MS Farm Dkt. 340) arguably ending the pursuit of the RICO allegations against the Harrison Parties in the Proposed RICO Complaint and establishing the claims as belonging to the Trustee.

**E.      Current Status of Bankruptcy Cases & Filing of Adversary Proceedings**

The Trustee currently is in the process of concluding any pending matters related to the Bankruptcy Cases in other courts and administering the bankruptcy estates.  Despite multiple final judgments in various judicial forums in Mississippi and Alabama in favor of the Trustee, Bishop Edwards, the Church-related entities, and/or others purportedly acting on behalf of Bishop Edwards or the Church have continued to disrupt the administration of the bankruptcy estates.

**1.      Motion to Stay — Heritage Bankruptcy Case**

On September 18, 2020, Dynasty filed the Motion to Stay (the "Motion to Stay") (Heritage Dkt. 490) in the Heritage Bankruptcy Case asking the Court to stay the Trustee's execution of the Alabama Final Judgment with respect to the Sumter Property on the ground that it had filed a petition for a writ of certiorari to the U.S. Supreme Court (the "Alleged Certiorari Petition") seeking review of the Alabama Final Judgment.  (Heritage Dkt. 490).  Counsel for Dynasty, Henry L. Penick ("Penick"), did not attach a copy of the Alleged Certiorari Petition to the Motion to Stay. The Trustee filed the Trustee's Response to Motion to Stay (the "Trustee's Response to Motion to Stay") (Heritage Dkt. 493) asserting that Penick declined to provide him with a copy of the Alleged

Certiorari Petition.   To expedite the resolution of the dispute, the Court entered the Order Regarding Motion to Stay (the "Order to Supplement") (Heritage Dkt. 505) ordering Penick to produce a copy of the Alleged Certiorari Petition to resolve the uncertainty (Heritage Dkt. 505, 507, 509), but he failed to do so.   After a hearing, the Court entered the Order Denying Motion to Stay (Heritage Dkt. 528) denying Dynasty's request on three (3) grounds.   First, the Court held that Dynasty had not demonstrated that a timely petition for a writ of certiorari had been filed with the Supreme Court.   Second, even if such a petition were pending before the Supreme Court, this Court was not the appropriate court to stay the execution of the Alabama Final Judgment.   Finally, Dynasty had not taken the proper procedural steps to request injunctive relief against the Trustee or object to the sale of the property in question.   (Heritage Dkt. 528).

### 2.        Whistleblower Complaint

On September 21, 2020, Bishop Edwards, purportedly acting without the assistance of counsel (*pro se*), filed a complaint titled "Whistle Blower" (the "Whistleblower Complaint") (Adv. Dkt. 1-3) individually and purportedly on behalf of Heritage, AAA, and AL-MS Farm against Pruitt, Harrison, King, the estate of Johnson,[12] the Honorable Eddie Hardaway, and Margo Bryan in the United States District Court for the Northern District of Alabama (the "Alabama District Court") (Adv. Dkt. 1-3; Civ. No. 7:20-cv-1400-LSC Dkt. 1).   The Whistleblower Complaint, which Bishop Edwards filed without providing notice to the Trustee or the Court, begins by invoking the procedures in 50 U.S.C. § 3033(k)(5)(A) to report an "urgent concern."   The Whistleblower Complaint also alleges the existence of a criminal enterprise in violation of numerous criminal statutes: the Drug Abuse Prevention and Control Act with respect to continuing

_____

[12] Johnson died in 2019.   For brevity, all references to Johnson after his death are to his estate.

criminal enterprises (21 U.S.C. § 848); the RICO Act definitions of "racketeering activity" and "state" (18 U.S.C. § 1961) and for laundering monetary instruments (18 U.S.C. § 1956); the general provisions of the criminal code (18 U.S.C. § 2); the provisions of the criminal code regarding false entries and reports of moneys or securities (18 U.S.C. § 2073); for deprivation of rights under color of law (18 U.S.C. § 242); and for obstruction of justice by retaliating against a witness, victim, or an informant (18 U.S.C. § 1513). To the extent the allegations are construed as a private civil claim under the RICO Act, 18 U.S.C. § 1964, the factual basis appears to arise from the entry of the Alabama Default Judgment against Heritage, AL-MS Farm, AAA, and Bishop Edwards and the pre-petition sale of the Newton County Property to AL-MS Farm in 2007. Attached to the Whistleblower Complaint are numerous documents including the Proposed RICO Complaint,[13] which previously had been attached to the Motion to Compel.

### 3.    Adversary Proceedings

On October 2, 2020, the Trustee initiated the Adversary Proceedings by filing the Complaint. In the Complaint, the Trustee seeks a preliminary and permanent injunction pursuant to 11 U.S.C. § 105 prohibiting Bishop Edwards from pursuing any claims in any other federal court or in any state court that belong to the bankruptcy estates of Heritage or AL-MS Farm or that collaterally attack any final orders of the Court. (Adv. Dkt. 1). The Trustee, on behalf of Heritage and AL-MS Farm also seeks damages for civil contempt under 11 U.S.C. § 105 against Bishop Edwards for violation of the automatic stay under 11 U.S.C. § 362(a)(3). Upon the filing of a

---

[13] The Court understands the Proposed RICO Complaint attached to the Whistleblower Complaint to be an earlier version of the Proposed RICO Complaint attached to the Motion to Compel. The differences between the two versions are evidenced by the "track changes" markings on the Proposed RICO Complaint attached to the Whistleblower Complaint. The differences are minimal, not substantive. and appear to be part of the drafting process of the Proposed RICO Complaint for the Motion to Compel. Because it makes no difference to the issues addressed here, the Court discusses both versions as one.

bankruptcy petition, that statute prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *See City of Chicago v. Fulton*, 141 S. Ct. 585, 589 (2021). The Trustee contends that the filing of the Whistleblower Complaint willfully violated 11 U.S.C. § 362(a)(3).

        **4.**        **Motion to Sell — Heritage Bankruptcy Case**

On October 5, 2020, the Trustee filed the Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (the "Motion to Sell") (Heritage Dkt. 497) asking the Court to approve the sale of two parcels of land in Sumter County, Alabama (the "Sumter Property"). Title to the Sumter Property was revested in Heritage as a result of litigation pursued by the Trustee to set aside the conveyances of the Sumter Property to Dynasty as fraudulent transfers. (Heritage Dkt. 490; Preliminary Inj. Hr'g at 11:41:00-11:41:30 (Oct. 27, 2020)).

Two objections to the Motion to Sell were filed. Bayview Loan Servicing, LLC ("Bayview") and IB Property Holdings, LLC ("IB") filed a joint Response to Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (Heritage Dkt. 502), and the Harrison Parties filed the Response to Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens and Auctioneer's Fees and Expenses (Heritage Dkt. 508). Dynasty did not file an objection to the Motion to Sell. Subsequently, the Trustee, Bayview, IB, and the Harrison Parties reached an agreement, and the Court entered the Agreed Order Approving Motion for Approval of Auction Contract/Proposal, Sale of Property, Free and Clear of Liens, and Auctioneer's Fees and Expenses (the "Sumter Sale Order") (Heritage Dkt. 518).

### 5.       Preliminary Injunction Hearing — Adversary Proceedings

On October 27, 2020, the Court held the Preliminary Injunction Hearing on the request for a preliminary injunction in the Complaint (the "Motion for Preliminary Injunction"). The Trustee asked the Court, pursuant to 11 U.S.C. § 105, to enjoin Bishop Edwards from pursuing the allegations in the Whistleblower Complaint individually or on behalf of Heritage, AL-MS Farm, or AAA in any foreign jurisdiction. (Adv. Dkt. 1 ¶ 44). The Court took the matter under advisement and issued the Preliminary Injunction Order on November 18, 2020 granting the Motion for Preliminary Injunction.

The Preliminary Injunction found that Bishop Edwards was not authorized to pursue claims belonging to the bankruptcy estates of Heritage and AL-MS Farm and such actions violated the automatic stay. The Court also held that the Whistleblower Complaint was a collateral attack in a foreign jurisdiction on the Newton Sale Order, the Confirmation of Newton Sale Order, and the Claim Order of this Court. The Court, therefore, issued a preliminary injunction enjoining Bishop Edwards from continuing to pursue claims in any state court or other federal court belonging to the bankruptcy estates of Heritage and AL-MS Farm while purportedly acting on their behalf and from pursuing claims that collaterally attack any final order of the Court.

### 6.       Dismissal of Whistleblower Complaint

Prior to the Preliminary Injunction Hearing on October 22, 2020, Bishop Edwards filed three amendments to the Whistleblower Complaint (Civ. No. 7:20-cv-01400-LSC Dkt. 2, 3, 10). The third amended Whistleblower Complaint named as additional defendants the Trustee and Sharon Harris ("Harris"), the Clerk of the Alabama District Court. (Civ. No. 7:20-cv-01400-LSC Dkt. 10). In response, the Trustee filed the Motion to Dismiss of J. Stephen Smith (Civ. No. 7:20-

cv-01400-LSC Dkt. 12).  Although the Trustee testified about this development at the Preliminary Injunction Hearing, the matter was not properly before the Court.[14]

During the pendency of the Motion for Preliminary Injunction, the Alabama District Court entered the Memorandum of Opinion (Adv. Dkt. 14; Civ. No. 7:20-cv-01400-LSC Dkt. 13) and the Order (Adv. Dkt. 14; Civ. No. 7:20-cv-01400-LSC Dkt. 14) dismissing with prejudice the Trustee and Harris as defendants because of Bishop Edwards' failure to obtain permission before filing the third amended Whistleblower Complaint and dismissing with prejudice all other defendants for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  FED. R. CIV. P. 12.  The Alabama District Court held that it was unclear how 50 U.S.C. § 3033(k)(5)(A), which protects intelligence officials[15] from retaliation, related to the factual allegations in the Whistleblower Complaint.  The Alabama District Court also noted that an "urgent concern" under 50 U.S.C. § 3033(k)(5)(A) should be reported as a

---

[14] On November 12, 2020, Bishop Edwards filed in the Heritage Bankruptcy Case the Notice of Motion Pursuant to Rule 60(d)(3) & 60(b)(4) (the "Notice") (Heritage Dkt. 523) alleging that this Court "has been tagged in a Continuing Criminal Enterprise of stealing land and laundering the property."  The Court issued Orders to Show Cause (the "Show Cause Orders") (Heritage Dkt. 529, 530) to Bishop Edwards to appear and show cause why the Notice should not be stricken from the docket and why sanctions or other relief should not be imposed against him because of immaterial, impertinent, scandalous and/or defamatory matter contained in the Notice and because of impermissible "ghostwriting."  On January 25, 2020, the Court held a hearing on the Show Cause Orders (the "Show Cause Hearing").  At the Show Cause Hearing, Bishop Edwards, acting without the assistance of counsel (*pro se*), appeared and testified that he signed the Notice without reading it and did not know the name of the individual who prepared it or presented it to him for his signature.  (Show Cause Hr'g at 2:42:18-2:43:17 (Jan. 25, 2021)).  A separate order striking the Show Cause Orders will be entered in the Heritage Bankruptcy Case. *See* 11 U.S.C. § 107(b)(2); FED R. BANKR. P. 9011, 9018.

[15] "An employee of an element of the intelligence community, an employee assigned or detailed to an element of the intelligence community, or an employee of a contractor to the intelligence community who intends to report to Congress a complaint or information with respect to an urgent concern may report such complaint or information to the Inspector General."  50 U.S.C. § 3033(k)(5)(A).

"complaint to the Inspector General." *Id.* The dismissal does not moot the Adversary Proceedings because the injunctive relief sought by the Trustee is not limited to the claims asserted in the Whistleblower Complaint, because the dismissal may not end Bishop Edwards's litigious pursuits, and because the Trustee seeks damages for Bishop Edwards' alleged stay violation.

### 7.   Request for Default — Adversary Proceedings

On November 9, 2020, the Trustee filed the Request to Clerk to Enter Default (Adv. Dkt. 11) asking the Clerk of the Bankruptcy Court (the "Clerk") to enter a default against Bishop Edwards for his failure to plead, answer, or otherwise defend the Adversary Proceedings. The Trustee attached the Affidavit of Jim F. Spencer, Jr. in Support of Entry of Default (the "Affidavit") (Adv. Dkt. 11-1). The Affidavit provides that a copy of the Complaint and a summons were personally served on Bishop Edwards on October 6, 2020 and that as of November 9, 2020, Bishop Edwards has failed to answer, plead, or otherwise defend the Adversary Proceeding. (Adv. Dkt. 11-1 ¶¶ 3-4). The Clerk entered the Entry of Default (Adv. Dkt. 12) on November 10, 2020.

### 8.   Motion to Reconsider Sumter Sale Order — Heritage Bankruptcy Case

On November 16, 2020, Dynasty filed the Motion to Reconsider (the "Motion to Reconsider Sumter Sale Order") (Heritage Dkt. 525) asking the Court to reconsider the Sumter Sale Order. In the Motion to Reconsider Sumter Sale Order, Dynasty alleges that it "was not allowed to give input in the hearing, or raise its objection predicated on its prior Motion to Stay proceedings until Dynasty's Petition for writ of Certiorari to the United State Supreme Court is adjudicated." (Heritage Dkt. 525 ¶ 5). Dynasty did not file a timely written objection to the Motion to Sell. The Court denied the Motion to Reconsider Sumter Sale Order from the bench and issued the Order Denying Motion to Reconsider (the "Order Denying Motion to Reconsider Sumter Sale Order") (Heritage Dkt. 562). The Court found that Dynasty: (1) did not have an interest in the

property at issue, the Sumter Property; (2) failed to file a written objection to the Motion to Sell before the deadline to assert an interest in the disposition of the Sumter Property; (3) misinterpreted the Court's bench ruling on the Motion to Stay; (4) did not reserve its opportunity to participate in the hearing on the Motion to Sell because it did not file an objection; (5) did not properly seek authority to participate via telephone; and (6) waived the right to participate in the settlement negotiations that produced the Sumter Sale Order.

### 9.      Motion for Default — Adversary Proceedings

On November 20, 2020, the Trustee filed the Motion for Default in the Adversary Proceedings asking the Court to enter a default judgment permanently enjoining Bishop Edwards in accordance with the Complaint and holding Bishop Edwards in civil contempt for violating the automatic stay under 11 U.S.C. § 362(a)(3).  The Court scheduled the Hearing for January 6, 2021.

### 10.     Notice of Appeal — Order Approving Greene Settlement — Heritage Bankruptcy Case

On December 8, 2020, the Court entered the Order Approving Greene Settlement approving the terms of a settlement agreement reached by the Trustee, the Harrison Parties, and AAA and the Church.  On December 18, 2020, Van Turner ("Turner"), an attorney with Bruce Turner PLLC in Tennessee, and Robinson, both purportedly acting on behalf of Heritage, filed the Notice of Appeal to the United States District Court for the Southern District of Mississippi (the "Notice of Appeal of Order Approving Greene Settlement") (Tr. Ex. 5; Heritage Dkt. 563) in the Heritage Bankruptcy Case appealing the Order Approving Greene Settlement.  *See Heritage Real Estate Investment, Inc. v. Johnson, et al.*, No. 3:20-cv-00810-CWR-FKB (S.D. Miss. Dec. 21, 2020).  The appeal was filed after the Court's issuance of the Preliminary Injunction in the Adversary Proceedings.

On January 4, 2021, the Trustee filed the Motion to Dismiss Appeal (the "Motion to Dismiss Appeal of Order Approving Greene Settlement") (Tr. Ex. 3; No. 3:20-cv-00810-CWR-FKB Dkt. 2) asking the Mississippi District Court to dismiss the appeal. The Trustee explained that "(i) Heritage, as an entity separate from the Trustee, has no authority to hire attorneys to file the notice of appeal and (ii) Heritage, as an entity separate from the Trustee, has no standing to pursue this appeal." (*Id*.). In the Memorandum of Authorities in Support of Motion to Dismiss Appeal for Lack of Standing (the "Brief in Support of the Motion to Dismiss Appeal") (Tr. Ex. 4; No. 3:20-cv-00810-CWR-FKB Dkt. 3) the Trustee stated that he "did not authorize or initiate the filing of the notice of appeal" and asked the Mississippi District Court to dismiss the appeal. The Harrison Parties joined in the Motion to Dismiss Appeal of Agreed Order Approving Greene Settlement. (No. 3:20-cv-00810-CWR-FKB Dkt. 6). No response to the Motion to Dismiss Appeal of Order Approving Greene Settlement was filed by the attorneys purportedly acting on behalf of Heritage. The Mississippi District Court extended the deadline to respond to the Motion to Dismiss Appeal of Order Approving Greene Settlement to February 1, 2021. No further action has been taken.

### 11. Notice of Appeal — Order Denying Motion to Reconsider Sumter Sale Order — Heritage Bankruptcy Case

On January 4, 2021, Turner, purportedly acting on behalf of Heritage, filed the Amended Notice of Appeal to the United States District Court for the Southern District of Mississippi (the "Notice of Appeal of Order Denying Motion to Reconsider Sumter Sale Order") (Tr. Ex. 6; Heritage Dkt. 571) in the Heritage Bankruptcy Case. *See Heritage Real Estate Inv., Inc. v. Smith,*

No. 3:21-cv-00003-CWR-LGI (S.D. Miss. Jan. 5, 2021).  This appeal was filed after the Court's issuance of the Preliminary Injunction in the Adversary Proceedings.

The Trustee filed the Motion to Dismiss Appeal (the "Motion to Dismiss Appeal of Order Denying Motion to Reconsider Sumter Sale Order") (No. 3:21-cv-00003-CWR-LGI Dkt. 3),[16] asking the Mississippi District Court to dismiss the appeal.  The Trustee asserts that "Heritage, as an entity separate from the Trustee, has no standing to pursue this appeal and Heritage, as an entity separate from the Trustee, has no authority to hire attorneys to file the notice of appeal." (*Id.*).  On January 25, 2021, Bishop Edwards, on behalf of Heritage, filed the Second Amended Notice of Appeal (the "Amended Notice of Appeal of Order Denying Motion to Reconsider Sumter Sale Order") (No. 3:21-cv-00003-CWR-LGI Dkt. 5) in the Mississippi District Court.[17]  The stated purpose of the Amended Notice of Appeal of Order Denying Motion to Reconsider Sumter Sale Order was to bring attention to "special circumstances" including evidence of an alleged "Continuing Criminal Enterprise" and "RICO."  The allegations in the Amended Notice of Appeal of Order Denying Motion to Reconsider Sumter Sale Order suggest that the "Alabama and Mississippi judiciary" are under investigation by the "United State Court of Appeals." (*Id.*).

## F.    Hearing

On January 6, 2021, the Court held the Hearing on the Motion for Default.  Bishop Edwards, acting without the assistance of counsel (*pro se*), did not appear.  At the Hearing, Spencer

---

[16] At the Hearing, the Trustee explained that the Mississippi District Court had only recently assigned a civil action number to the appeal of the Order Denying the Motion to Reconsider Sumter Sale Order and that the Motion to Dismiss Appeal of Order Denying Motion to Reconsider Sumter Sale Order was forthcoming.  The Court takes judicial notice of the docket in the appeal of the Order Denying Motion to Reconsider Sumter Sale Order pending before the Mississippi District Court.  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

[17] The Court takes judicial notice of the Amended Notice of Appeal of Order Denying Motion to Reconsider Sumter Sale.  *Walker*, 938 F.3d at 735.

summarized the recent developments in the Bankruptcy Cases and related adversary proceedings as outlined above.  The Trustee testified that he is still seeking a permanent injunction because Bishop Edwards, or individuals purportedly acting on his behalf, continue to interfere with the administration of the bankruptcy estates and pursue claims on behalf of Heritage and AL-MS Farm without his authorization.  (Hr'g at 10:08:00-10:09:00 (Jan. 6, 2021)).[18]  The Trustee also stated that the recent filings in the Heritage Bankruptcy Case and in the Mississippi District Court appear to violate the Preliminary Injunction issued by this Court on November 18, 2020.  (Hr'g at 10:10:09-10:09:57 (Jan. 6, 2021)).  The Trustee introduced into evidence copies of the Notice of Appeal of the Order Approving Settlement (Tr. Ex. 5), the Motion to Dismiss Appeal of Order Approving Greene Settlement (Tr. Ex. 3), the Brief in Support of the Motion to Dismiss Appeal (Tr. Ex. 4), and the Notice of Appeal of the Order Denying Motion to Reconsider Sumter Sale Order (Tr. Ex. 6).

The Trustee also offered into evidence a copy of the Petition for Writ of Certiorari (the "Supreme Court Petition") (Tr. Ex. 7) that he received from an unknown source.  (Hr'g at 10:11:45-10:12:00 (Jan. 6, 2021)).  The Supreme Court Petition identifies Dynasty as the petitioner but does not have an assigned case number.  (Tr. Ex. 7).  Indeed, there is no indication that Dynasty filed the Supreme Court Petition, and a search of the Supreme Court electronic docket system does not produce a result for "Dynasty Group, Inc. v. Stephen Smith, Trustee for Bankruptcy Estate of Heritage Real Estate Investment Corporation."  (Tr. Ex. 7; Hr'g at 10:11:45-10:12:23 (Jan. 6, 2021)).  The Supreme Court Petition indicates that Robinson represents Dynasty.  (Tr. Ex. 7).

At the Hearing, the Trustee also provided evidence of the fees and expenses incurred by the Heritage and AL-MS Farm bankruptcy estates in filing and litigating the Adversary

---

[18] The Hearing was not transcribed.  Citations to the timestamp of the audio recording are "(Hr'g at 00:00:00-00:00:00 (Jan. 6, 2021))".

Proceedings and defending the Whistleblower Complaint. The Trustee testified that he would not have incurred the fees and expenses but for Bishop Edwards' continued violation of the automatic stay. (Hr'g at 10:18:24-10:21:02 (Jan. 6, 2021)). The Trustee offered an itemized invoice for fees and expenses from the law firm Watkins & Eager PLLC ("Watkins & Eager") incurred in the Heritage Adversary (the "Heritage Invoice") (Tr. Ex. 1) and an itemized invoice for fees and expenses from Watkins & Eager incurred in the AL-MS Farm Adversary (the "AL-MS Farm Invoice") (Tr. Ex. 2).

The Heritage Invoice provides current fees of $7,400.00 and current expenses of $1,287.50 for a total amount due of $8,687.50. (Tr. Ex. 1). The itemization of the Heritage Invoice details 26.3 total billable hours devoted to litigating the Heritage Adversary, pursuing the dismissal of the Trustee from the third amended Whistleblower Complaint, preparing for, and attending the hearing on the Motion to Stay, and drafting the Joint Settlement Motion in the Greene Adversary. (Tr. Ex. 1). The AL-MS Farm Invoice provides current fees of $17,526.00 and current expenses of $1,287.50 for a total amount due of $18,813.50. (Tr. Ex. 2). The AL-MS Farm Invoice details 60.80 total billable hours devoted to litigating the AL-MS Farm Adversary and pursuing the dismissal of the Trustee from the third amended Whistleblower Complaint. (Tr. Ex. 2).

### Discussion

In the Complaint, the Trustee asks the Court, pursuant to 11 U.S.C. § 105, to permanently enjoin Bishop Edwards from pursuing the allegations in the Whistleblower Complaint individually or on behalf of Heritage, AL-MS Farm, or AAA, to find that Bishop Edwards' willfully violated the automatic stay, and to hold Bishop Edwards in civil contempt for his willful violation of the automatic stay. (Adv. Dkt. 1 ¶¶ 44, 51). The Court must first determine if a default judgment is proper under the circumstances, and if so, the appropriate relief.

## A.    Default Judgment

Rule 55 of the Federal Rules of Civil Procedure as made applicable to adversary proceedings by Rule 7055 of the Federal Rules of Bankruptcy Procedure governs the entry of a default judgment.  The first step for entry of a default judgment is the entry on the docket of a default by the clerk indicating that the defendant "has failed to plead or otherwise defend" the action.  FED. R. CIV. P. 55(a).  If the defendant's failure "to plead or otherwise defend" is supported by an affidavit or otherwise, the clerk must enter the party's default.  FED. R. CIV. P. 55(a).  Once the clerk has entered the default, the defendant's liability is established in accordance with the factual allegations of the complaint, except for the amount of any unspecified damages.  *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

The Fifth Circuit has held that "default judgments are a drastic remedy not favored by the Federal Rules and resorted to by the courts only in extreme situations."  *Sun Bank of Ocala v. Pelican Homestead & Savs. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).  "[A] default judgment is committed to the discretion of the district court."  *Chevron Intell. Prop., L.L.C. v. Allen*, No. 7:08-CV-98-O, 2009 WL 2596610, at *2 (N.D. Tex. Aug. 24, 2009) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).  The Fifth Circuit has cautioned that even when a defendant is technically in default, the plaintiff is not entitled to a default judgment as a matter of right.  *Ganther v. Ingle*, 75 F.3d 207 (5th Cir. 1996).  The judiciary favors a trial on the merits, and the Fifth Circuit has held that procedural maneuvers to terminate litigation should be resorted to only in extreme situations.  *Sun Bank of Ocala*, 874 F.2d at 276; *see Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 563 (5th Cir. 2003).  In determining whether to enter a default judgment, the Fifth Circuit has considered the following factors: (1) if the default was caused by a good faith mistake or excusable neglect; (2) if there has been substantial prejudice; (3) the harshness of a

default judgment; (4) if there are material issues of fact; (5) if grounds for a default judgment are clearly established; and (6) if the court would think itself obligated to set aside the default on the defendant's motion. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

The Trustee has established the grounds for a default judgment in the Adversary Proceedings. Bishop Edwards has failed to plead or otherwise defend against the Complaint in the Adversary Proceedings. Bishop Edwards did not file a response to the Motion for Default or appear at the Hearing to offer evidence that a default judgment is not warranted.

The Court has found no evidence of a good faith mistake or excusable neglect. Instead, since being personally served with the Complaint on October 6, 2020 and later the Preliminary Injunction on November 23, 2020, Bishop Edwards has continued to pursue unauthorized actions individually and on behalf of Heritage and AL-MS Farm. For example, Bishop Edwards has filed the Whistleblower Complaint and the third amended Whistleblower Complaint in the Alabama District Court.[19]

The Court finds that the Trustee has established that Bishop Edwards violated the automatic stay pursuant to 11 U.S.C. § 362(a)(3). The Complaint alleges that filing the Whistleblower Complaint is "in blatant disregard for the automatic stay." (Adv. Dkt. 1 ¶ 52). Section 362(a)(3) provides that the filing of a petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The Complaint alleges that Bishop Edwards is exercising control over claims belonging to the Trustee. The resolution of the Motion to Compel established that the claims in the Proposed RICO Complaint belonged to the Trustee. As the Court

---

[19] At this time, there is insufficient evidence to attribute the Notice of Appeal of Order Approving Greene Settlement filed by Robinson and Turner or the Notice of Appeal of Order Denying Motion to Reconsider Sumter Sale Order filed by Turner to Bishop Edwards.

found, the Whistleblower Complaint attached an earlier version of the Proposed RICO Complaint. The unauthorized pursuit of the Whistleblower Complaint by Bishop Edwards on behalf of Heritage and AL-MS Farm demonstrates a willful violation of the automatic stay and disregard for the orders of this Court. *See S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1150 (5th Cir. 1987). The Court, therefore, finds that Bishop Edwards willfully violated the automatic stay.

The Court has also determined that a default judgment is not unduly harsh and does not prejudice Bishop Edwards. As the Court previously held in the Preliminary Injunction, Bishop Edwards does not have standing or authority to pursue claims on behalf of or belonging to Heritage or AL-MS Farm. Enjoining Bishop Edwards from pursuing claims on behalf of Heritage or AL-MS Farm is simply a "prohibition from doing that which [he] is not permitted to do in the first place." *Henkel v. Lickman (In re Lickman)*, 286 B.R. 821, 831 (Bankr. M.D. Fla. 2002). The Court finds that cause exists to grant the Motion for Default against Bishop Edwards. The Court next considers the Trustee's requested relief.

## B.   Permanent Injunction Standard

The Court's exercise of its stay power under 11 U.S.C. § 105(a) is subject to Rule 65 of the Federal Rules of Civil Procedure ("Rule 65"), as made applicable to adversary proceedings by Rule 7065 of the Federal Rules of Bankruptcy Procedure. FED. R. CIV. P. 65; FED. R. BANKR. P. 7065; *Commonwealth Oil Refin. Co. v. U.S.E.P.A. (In re Commonwealth Oil Refin. Co.)*, 805 F.2d 1175, 1188-89 (5th Cir. 1986). Every order granting an injunction must state the reasons why it

was issued, the specific terms, and in reasonable detail the acts restrained or required.  FED. R. CIV. P. 65(d)(1).

The elements that the Court must consider in granting a permanent injunction are similar to the elements necessary for a preliminary injunction.  "The party seeking a permanent injunction must . . . establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damages that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest."  *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 533 (5th Cir. 2016) (internal quotations & citations omitted).

### 1.    Success on the Merits

The Trustee must first establish success on the merits.  The Complaint requests: (1) a preliminary and permanent injunction against Bishop Edwards; (2) contempt sanctions against Bishop Edwards for willfully violating the automatic stay; and (3) other relief.  (Adv. Dkt. 1).  Since Bishop Edwards has not responded, the allegations in the Complaint are accepted as true, and the Court held the Hearing to supplement any allegations in the Complaint and determine the amount of damages.  The Trustee asserts that Bishop Edwards has no authority or standing to pursue claims on behalf of Heritage or AL-MS Farm[20] and that Bishop Edwards violated the automatic stay by asserting RICO claims in the Whistleblower Complaint that challenge this Court's prior final orders.  The Court agrees with the Trustee that Bishop Edwards's actions are an unauthorized attempt "to exercise control over property of the estate" in violation of the automatic stay.  11 U.S.C. § 362(a)(3).  The Court, therefore, finds that Bishop Edwards has no

---

[20]  Additionally, the Court notes that Heritage and AL-MS Farm are corporations, and Bishop Edwards is not an attorney.  A non-attorney may not represent a corporation.  28 U.S.C. § 1654.

authority to assert claims belonging to the bankruptcy estates of Heritage and AL-MS Farm, and his actions violated the automatic stay under 11 U.S.C. § 362(a)(3).

The Court also agrees with the Trustee that the claims asserted in the Whistleblower Complaint are a direct collateral attack on the Newton Sale Order, the Confirmation of Newton Sale Order, and the Claim Order. The Whistleblower Complaint attempts to grant the Church-related entities, through Bishop Edwards, another opportunity to challenge the Court's orders approving the sale of the Newton County Property for $726,000.00 on May 19, 2017, and the Claim Order, in which the Court recognized the Alabama Default Judgment as the basis for the Harrison Parties' unsecured claims in the Bankruptcy Cases. Reach appealed the Confirmation of Newton Sale Order (Civ. No. 3:17-CV-00564-HSD-JCG Dkt. 7) to no avail and then initiated an adversary proceeding challenging the validity of AL-MS Farm's title to the Newton County Property. (Adv. Dkt. 17-00038-NPO Dkt. 1). After the Court dismissed the proceeding, Reach appealed again and again was unsuccessful on appeal. *Reach, Inc.*, 791 F. App'x at 477. The Show Cause Hearing is the first time Bishop Edwards has appeared personally in the courtroom, but his leadership of the Church and its related entities, including Reach and Dynasty, leaves no doubt of his personal involvement in other litigation related to the Bankruptcy Cases and the Adversary Proceedings. If Bishop Edwards wanted to challenge the orders of this Court individually, he needed to appear at the proper time and assert the requisite standing to challenge the orders of this Court, but he did not. Instead, Church-related entities have unsuccessfully challenged these orders and the time to challenge these final orders of the Court has passed. In *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), the U.S. Supreme Court held that:

> [I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected. If respondents believed the [Bankruptcy Court's order] was improper, they should have

challenged it in the Bankruptcy Court . . . .  If dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal to the district court for the judicial district in which the bankruptcy judge is serving and then to the Court of Appeals.

*Id.* at 313 (citations omitted).  It appears that dissatisfied with the unsuccessful attempts to retain the assets of Heritage and AL-MS Farm, Bishop Edwards has orchestrated another challenge to the liquidation of the assets of Heritage and AL-MS Farm by initiating litigation using different plaintiffs, including himself.  Here, as in *Celotex*, Bishop Edwards, and other disgruntled parties, either chose not to pursue the appropriate course of action, failed to pursue the appropriate course of action, or pursued an incorrect course of action.  *Id.*  Whatever the source of Bishop Edwards's disagreement with the administration of the Bankruptcy Cases, he chose not to pursue the appropriate course of action in this Court but instead to collaterally attack the final orders of this Court in foreign jurisdictions.  Bishop Edwards, or others purportedly acting on behalf of Heritage and AL-MS Farm, cannot be permitted to attack the orders of this Court in any other federal court or any state court without "seriously undercutting the orderly process of the law."  *Id.*  Accordingly, the Court finds that the Trustee has demonstrated a likelihood of success in establishing that a permanent injunction is appropriate under 11 U.S.C. § 105 and that Bishop Edwards's actions violated the automatic stay under 11 U.S.C. § 362(a)(3).

### 2.    Trustee Will Suffer Irreparable Harm

The issuance of a permanent injunction requires "irreparable injury for which there is no adequate remedy at law."  *Sanchez v. Ameriquest Mortg. Co. (In re Sanchez)*, 372 B.R. 289, 319 (Bankr. S.D. Tex. 2007).  The continued interference of Bishop Edwards and other Church-related entities threatens the administration of the Bankruptcy Cases and depletes the amount of estate funds available for distribution to creditors.  (Preliminary Inj. Hr'g at 2:31:30-2:32:45 (Oct. 27, 2020)).  The Trustee is preparing to close the AL-MS Farm Bankruptcy Case, and Bishop

Edwards's actions have only delayed his efforts. Having recognized Bishop Edwards's actions constitute an unauthorized exercise of authority over property of the bankruptcy estates of Heritage and AL-MS Farm as collateral attacks on the Newton Sale Order, Confirmation of Newton Sale Order, and the Claim Order, the threat of irreparable injury to the Trustee and the bankruptcy estates is clear. To allow Bishop Edwards to continue to seek review of the final orders of this Court seriously undercuts the orderly process of law and delays the administration of the bankruptcy estates. Since the filing of the Adversary Proceedings, Bishop Edwards, or other purportedly acting on his behalf, has continued to disregard the orders of this Court and the preliminary injunction to the detriment of the Trustee, the Heritage bankruptcy estate, and the AL-MS Farm bankruptcy estate. Bishop Edwards' unauthorized actions demonstrate an attempt to circumvent the bankruptcy process, a process that Heritage and AL-MS Farm voluntarily initiated. The Court finds that there is a threat of irreparable harm to the Trustee, the Heritage bankruptcy estate, and the AL-MS Farm bankruptcy estate that merits the issuance of a permanent injunction against Bishop Edwards.

### 3.      Permanent Injunction Will Not Cause Harm

The Court has determined that Bishop Edwards does not have standing or authority to pursue claims on behalf of or belonging to Heritage or AL-MS Farm. The issuance of a permanent injunction against Bishop Edwards enjoining him from prosecuting these claims, therefore, cannot cause Bishop Edwards harm. Although the Alabama District Court dismissed the Whistleblower Complaint with prejudice, Bishop Edwards, or others purportedly acting on his behalf, have continued to pursue unauthorized claims on behalf of Heritage and AL-MS Farm. These claims are property of the AL-MS Farm bankruptcy estate and the Heritage bankruptcy estate, and the Trustee has not abandoned those claims. A permanent injunction enjoining Bishop Edwards from

pursuing these claims only prohibits him from taking unauthorized action at the expense of the Heritage and AL-MS Farm bankruptcy estates.  *In re Lickman*, 286 B.R. at 831.

### 4.    Permanent Injunction Will Not Disserve Public Interest

Bishop Edwards's pursuit of the claims asserted in the Whistleblower Complaint and other unauthorized actions on behalf of Heritage and AL-MS Farm is a collateral attack on the final orders issued by this Court.  If final orders of this Court are allowed to be challenged in foreign jurisdictions, debtors, creditors, trustees, and other interested parties may be compelled to defend these orders in endless attacks in foreign jurisdiction.  Allowing such attacks by foreign jurisdictions imposes a substantial difficulty and expense for debtors and trustees trying to administer bankruptcy estates.  For these reasons, the policies underlying an orderly and effective judicial system are well served by a permanent injunction and outweigh any competing concerns of Bishop Edwards.  *Lentz v. Cahaba Disaster Relief, LLC (In re CDP Corp.)*, 462 B.R. 615, 633 (Bankr. S.D. Miss. 2011).

### 5.    Unusual Circumstances

Injunctive relief requires not only the satisfaction of the usual prerequisites under Rule 65 but also the demonstration of "unusual circumstances."  *In re Zale Corp.*, 62 F.3d at 761.  As the Fifth Circuit has recognized, however, "[v]ery little Fifth Circuit case law exists concerning injunctions issued by a bankruptcy court to [temporarily or permanently] bar claims between nondebtor third parties."  *In re Zale Corp.*, 62 F.3d at 751 n.14 (allowing the trustee to enjoin actions between noncreditors and nondebtor in "unusual circumstances").  Although the Fifth Circuit has not directly addressed the issue of "unusual circumstances" when the actions of a nondebtor create a collateral attack on an order of a bankruptcy court, "other courts have recognized that such an attack presents the unusual circumstances necessary to warrant an

injunction." *In re CDP Corp.,* 462 B.R. at 633-34.  Here, the Court has found that the actions of Bishop Edwards constitute a collateral attack of the Newton Sale Order, Confirmation of Newton Sale Order, and the Claim Order, and that his continued pursuit of claims on behalf of Heritage and AL-MS Farm threaten the ongoing administration of the Heritage and AL-MS Farm bankruptcy estates.  The Court, therefore, finds that unusual circumstances exist to warrant a permanent injunction against Bishop Edwards in the Adversary Proceedings.

### 6.   Scope of Permanent Injunction

The Court has found that the Trustee's request to permanently enjoin Bishop Edwards under 11 U.S.C. § 105(a) is warranted.  The Court distinguishes this exercise of authority over Bishop Edwards, and individuals purportedly acting on his behalf, from any attempt by this Court to enjoin the Mississippi District Court, the Alabama District Court, or any other foreign jurisdiction from adjudicating the matters properly pending before the respective court.  *See In re CDP Corp.*, 462 B.R. at 628.  Moreover, the decision of this Court to enjoin Bishop Edwards, even though the Alabama District Court has dismissed with prejudice the Whistleblower Complaint, is necessary for the resolution of the Bankruptcy Cases and in the interest of judicial economy.  The Heritage Bankruptcy Case has been pending before this Court for nearly seven (7) years, and the AL-MS Farm Bankruptcy Case has been pending before this Court for nearly five (5) years.  As evidenced above, the Church-related entities engaged in protracted litigation in the Fifth Circuit, the Mississippi District Court, the Alabama District Court, the Alabama Supreme Court, the Lauderdale County Court, the Sumter County Court, and this Court.  In these attempts by Bishop Edwards through the Church-related entities to delay the administration of the bankruptcy estates and reclaim assets of Heritage and AL-MS Farm for the benefit of the non-debtor, Church-related entities, he has been unsuccessful.  The Court views the Whistleblower Complaint and subsequent

actions of Bishop Edwards to be another attempt to disrupt the Trustee's authority to administer the Bankruptcy Cases pursuant to his duties under 11 U.S.C. § 704. Bishop Edwards, or individuals purportedly acting on his behalf, is attempting to circumvent the authority of the Trustee with respect to the bankruptcy estates or collaterally attack the final orders of this Court. As such, his actions are improper.

**C.    Damages**

The Trustee requests that the Court "impose and award civil contempt sanctions for willful violations of the automatic stay[,]" specifically, the Trustee's attorney's fees and expenses. (Adv. Dkt. 1). A court may impose contempt sanctions for a knowing and willful violation of a court order, and the automatic stay imposed pursuant to 11 U.S.C. § 362 is considered the equivalent to a court order. 3 COLLIER ON BANKRUPTCY ¶ 362.12[2] (16th ed. 2021) (citing *Hubbard v. Fleet Mortg. Co.*, 810 F.2d 778 (8th Cir. 1987); *In re Xavier's of Beville*, Inc., 172 B.R. 667 (Bankr. M.D. Fla. 1994); *Fry v. Today's Homes, Inc., (In re Fry)*, 122 B.R. 427 (Bankr. N.D. Okla. 1990)). Any individual, therefore, who violates the stay may be held in contempt of court. *In re Adams*, 516 B.R. 361 (Bankr. S.D. Miss. 2014).

An action for contempt of court may be either criminal or civil in nature. *Placid Refin.Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 612 (5th Cir. 1997) (citation omitted). If the intent behind the contempt order is to punish, then the order is for criminal contempt. *Id.* If, however, the intent of the contempt order is to "coerce compliance with a court order or to compensate another party for the contemnor's violation," the order is civil. *Id.* Bankruptcy courts have the power to hold entities in civil contempt under 11 U.S.C. § 105(a), but not in criminal contempt. *In re Sanchez*, 372 B.R. at 309.

Any entity that willfully violates the automatic stay is subject to the bankruptcy court's

civil contempt power. *In re Meinke, Peterson, & Damer, P.C.*, 44 B.R. 105, 108 (Bankr. N.D. Tex. 1984). If a creditor is found to be in contempt because of a willful violation of the automatic stay, the bankruptcy court may award sanctions to the debtor. *In re Sanchez*, 372 B.R. at 310. As the Court previously held, Bishop Edwards has willfully violated the automatic stay, and the Trustee is entitled to damages arising out of Bishop Edwards' violation of the automatic stay.

The Trustee seeks compensation for attorney's fees and costs as damages. In order to determine whether the fees set forth in the Heritage Invoice and AL-MS Farm Invoice are reasonable, the Court employs the "lodestar" method, which requires the Court to multiply the prevailing hourly rate in the community by the number of hours that an attorney would reasonably expend pursuing his or her client's claim. *Walker & Patterson, P.C. v. Cahill (In re Cahill)*, 428 F.3d 536, 540 (5th Cir. 2005). After calculating the "lodestar" fee, the Court considers whether to adjust that fee upward or downwards based upon the twelve factors enumerated in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989). The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficult of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. The United States Supreme Court has cautioned that the presumption that the "lodestar" method provides a reasonable fee is a "strong one." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010). Similarly, the Fifth Circuit has held that "[t]he lodestar may not be

adjusted due to a *Johnson* factor that was taken into account during the initial calculation of the lodestar." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013).

### 1. Heritage Invoice

The Heritage Invoice reflects that from September 24, 2020 to December 17, 2020, the Trustee was charged an hourly billing rate of $300.00 for 21.9 hours of work completed by Spencer, $300.00 for 0.3 hours of work completed by J. Collins Wohner Jr. ("Wohner"), $250.00 for 2.20 hours of work completed by Waverly A. Harkins ("Harkins"), and $100.00 for 1.90 hours of work completed by Nancy A. Patterson ("Patterson"), which totals $7,400.00.  (Tr. Ex. 1).[21] The Heritage Invoice includes an itemization of expenses totaling $1,287.50.  In sum, the Trustee is seeking a total of $8,687.50 in attorney's fees and expenses in the Heritage Adversary.  The Court will begin by addressing the reasonableness of the attorney's fees.

The Mississippi Bar Association's online Lawyer Directory reflects that Spencer was admitted to practice law in Mississippi in 1987, Wohner was admitted to practice law in Mississippi in 1988, Harkins was admitted to practice law in Mississippi in 2006, and Patterson was admitted to practice law in Mississippi in 2011.   Miss. Bar Lawyer Directory, https://www.msbar.org/lawyer-directory/ (last visited Feb. 4, 2021).  The Court finds that $300.00, $250.00, and $100.00, respectively, are reasonable hourly rates for attorneys of similar skill, expertise, and reputation.  Therefore, the Court finds that the respective hourly billing rates are reasonable.

The itemization of the billing entries demonstrates that the time spent on the individual tasks are reasonable.  The Trustee, however, is only entitled to recover attorneys' fees reasonably incurred as a result of the violation of the automatic stay.  Most of the billing entries are for legal

---

[21] The total of $7,400.00 does not include time spent preparing for and attending the Hearing.

work performed in filing and litigating the Heritage Adversary and in defending the third amended Whistleblower Complaint and are related to the stay violation. *See, e.g., Young v. Repine (In re Repine)*, 536 F.3d 512, 522 (5th Cir. 2008). There are two billing entries that are not. The billing entry dated October 27, 2020 shows 1.5 hours spent preparing for and attending the hearing on the Motion to Stay, and the billing entry dated November 10, 2020 shows two (2) hours spent discussing and preparing the Joint Settlement Motion. (Tr. Ex. 1 at 3). The Court will reduce the attorneys' fees sought by the Trustee from $7,400.00 to $6,350.00 to remove these billing entries from the damages attributable to the stay violation.

As to the final step in determining the reasonableness of fees, the Court recognizes that it has the discretion to modify the "lodestar" fee based upon the twelve *Johnson* factors. *See CRG Partners Grp., L.L.C. v. Neary (In re Pilgrim's Pride Corp.)*, 690 F.3d 650, 652 (5th Cir. 2012) (holding that United States Supreme Court's decision in *Perdue* did not overrule framework applying *Johnson* factors). The Court finds that an adjustment to the "lodestar" fee is unnecessary in light of the strong presumption that the "lodestar" method provides a reasonable fee. The Court thus concludes that the attorney's fees of $6,350.00 are reasonable and appropriate.

Next, the Court turns to the reasonableness of the expenses detailed in the Heritage Invoice. The Trustee seeks reimbursement of $350.00 in filing fees and $937.50 in fees paid to Statewide Service of Process, LLC for perfecting personal service on Bishop Edwards, which totals $1,287.50. The Court finds that the expenses detailed in the Heritage Invoice are reasonable and related to the stay violation. Therefore, after reviewing the Heritage Invoice, the Court finds that the Trustee is entitled to $7,637.50 for attorney's fees and expenses as damages in the Heritage Adversary.

2.       **AL-MS Farm Invoice**

The AL-MS Farm Invoice reflects that from September 24, 2020 to November 24, 2020, the Trustee was charged an hourly billing rate of $300.00 for 56.60 hours of work completed by Spencer and $130.00 for 4.20 hours of work completed by Catherine Payne ("Payne"), which totals $17,526.00.  (Tr. Ex. 2).[22]  The AL-MS Farm Invoice includes an itemization of expenses totaling $1,287.50.  In sum, the Trustee is seeking a total of $18,813.50 in attorney's fees and expenses in the AL-MS Farm Adversary.  The Court will begin by addressing the reasonableness of the attorney's fees.

As the Court previously found, $300.00 is a reasonable hourly rate for attorneys of similar skill, expertise, and reputation as Spencer.  The itemization suggests that Payne is a paralegal in Spencer's office and spent 4.20 hours preparing the exhibits that the Trustee offered into evidence. The Court finds that the hourly rate for the administrative work is reasonable.

The Court further finds that the itemization of the billing entries demonstrates that the hours spent on the individual tasks are reasonable and related to the stay violation.  All of the billing entries are for work performed in filing and litigating the AL-MS Farm Adversary and defending the third amended Whistleblower Complaint.

As to the final step in determining the reasonableness of fees, the Court finds that an adjustment to the "lodestar" fee is unnecessary in light of the strong presumption that the "lodestar" method provides a reasonable fee.  The Court thus concludes that the attorney's fees of $18,813.50 are reasonable and appropriate.  *See CRG Partners Grp., L.L.C*, 690 F.3d at 652.

Next, the Court turns to the reasonableness of the expenses detailed in the AL-MS Farm Invoice.  The Trustee seeks reimbursement of $350.00 in filing fees and $937.50 in fees paid to

---

[22] This total of $17,526.00 does not include time spent preparing for and attending the Hearing.

Statewide Service of Process, LLC for perfecting personal service on Bishop Edwards, which totals $1,287.50. The Court finds that the expenses detailed in the AL-MS Farm Invoice are reasonable and related to the stay violation. Therefore, after reviewing the AL-MS Farm Invoice, the Court finds that the Trustee is entitled to $18,813.50 for attorney's fees and expenses as damages in the AL-MS Farm Adversary.

### 3.    Mitigation of Damages

Having determined that the Trustee incurred actual damages in the total amount of $26,451.00, the Court next considers whether the Trustee made reasonable efforts to mitigate those damages. This is necessary to determine whether the Trustee's damages were reasonably incurred as a result of Bishop Edwards' willful violation of the automatic stay. *In re Adams*, 516 B.R. at 374. The Court finds that Spencer's use of the filings in the AL-MS Farm Adversary as forms in the Heritage Adversary demonstrate an attempt to mitigate the cost to the Trustee. The Court also finds that the Trustee's efforts to end the litigious relationship with Bishop Edwards and the Church-related entities by seeking injunctive relief in the Adversary Proceedings is an attempt to mitigate the harm to the Heritage and AL-MS Farm bankruptcy estates. The amount of attorney's fees and expenses is not a result of the Trustee's failure to mitigate damages, but instead a result of Bishop Edwards' efforts to derail the administration of the Heritage and AL-MS Farm bankruptcy estates. For these reasons, the Court finds that the Trustee has made reasonable efforts to mitigate his actual damages.

### Conclusion

The Trustee has demonstrated that Bishop Edwards is pursuing claims belonging to the bankruptcy estates of Heritage and AL-MS Farm without authorization from the Trustee or this Court and in violation of the automatic stay. The filing of the Whistleblower Complaint is the

latest attempt by Bishop Edwards acting individually and through entities related to the Church to delay the administration of the Bankruptcy Cases.  Moreover, the Whistleblower Complaint constitutes a collateral attack in a foreign jurisdiction on the Newton Sale Order, the Confirmation of Newton Sale Order, and the Claim Order and represents a continued disregard for the orders of this Court.  The Trustee has incurred attorneys' fees and expenses in defending against the unauthorized actions of the Church-related entities to the detriment of the bankruptcy estates. Bishop Edwards's improper and unauthorized actions are a waste of judicial resources, threaten the Trustee's administration of the remaining assets in the Heritage Bankruptcy Case, and could delay the closing of the AL-MS Farm Bankruptcy Case.  Even though the Alabama District Court dismissed the Whistleblower Complaint, the Court finds that a permanent injunction is necessary to prevent Bishop Edwards and others acting on his behalf, from pursuing improper claims and litigation.  The Trustee has demonstrated that a permanent injunction enjoining Bishop Edwards from pursuing claims in any state court or other federal court belonging to the bankruptcy estates of Heritage and AL-MS Farm while purportedly acting on their behalf and from pursuing claims that collaterally attack any final order of this Court should be issued.  In addition, the Court finds that the Trustee is entitled to damages totaling $26,451.00 for Bishop Edwards' willful violation of the stay.  A separate final judgment consistent with this Opinion will be entered pursuant to Rule 7058 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##